```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
PARK INSURANCE COMPANY,                                     :
                                 Plaintiff,                 :
                                                            :      13 Civ. 03567 (LGS)
           -against-                                        :
                                                            :      OPINION AND ORDER
                                                            :
MONICO LUGO, et al.,                                        :
                                 Defendant.                 :
                                                            :
----------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

This is an interpleader action filed by Plaintiff Park Insurance Company ("Park") against Defendants Monico Lugo and Sarah Lugo (together, the "Lugos") and Thomas Young and Susan Eichhorn-Young (together, the "Youngs"). This action arises from an automobile accident in which the Lugos and the Youngs were injured and subsequently brought claims in Pennsylvania and New York state courts, respectively, against Daniel Solano, Eco America Trucking Corp. ("Eco") and Sav-On Waste Services, LLC ('Sav-On'), the latter of which holds a business automobile insurance policy (the "Policy") and a Form MCS-90 Endorsement for Motor Carrier Policies of Insurance for Public Liability (the "Endorsement") issued by Park.

Before the Court is Park's motion for summary judgment finding that (1) Park has no liability under the Endorsement to pay any judgment that may be entered against Sav-On; (2) Park has no liability under the Endorsement to pay any judgment that may be entered against Eco and/or Solano; and (3) the Youngs and the Lugos are entitled to the limits of the Policy and are not entitled to any sums under the Endorsement. Also before the Court is the Lugos' motion for summary judgment finding that Park is obligated to provide the proceeds of the Endorsement to

satisfy its obligations in this matter and directing Park to deposit with the Court $750,000 or, in the alternative, dismissing this action on the ground that Park lacks clean hands. For the reasons discussed below, Park's motion is granted in part and denied in part, and the Lugo's motion is denied.

## I. Background

### A. Facts

The facts are taken from the parties' summary judgment submissions and, as required on this motion, viewed in the light most favorable to the nonmoving parties on their respective motions.

On June 9, 2011, Park issued the Policy to Sav-On, which was effective from May 23, 2011 through May 23, 2012 and obligated Park to pay up to $500,000 per accident for damages assessed against Sav-On, who is the named insured under the Policy. In connection with the Policy, Park also issued the Endorsement to Sav-On, which provides $750,000 to satisfy certain financial responsibility requirements under the Motor Carrier Act of 1980 ("MCA") applicable to "motor carriers" engaged in interstate commerce.

On June 20, 2011, Solano transported non-hazardous municipal waste from a transfer station in Goshen, New York to the Keystone Landfill in Dunmore, Pennsylvania and then began a return trip to the Goshen station with an empty trailer in order to pick up a second load of waste, which he intended also to transport to the Keystone Landfill. On this return trip, Solano was involved in a multiple-vehicle accident on Interstate 84 in Westfall, Pennsylvania (the "Accident"). Other vehicles involved in the Accident included two passenger cars, one

containing the Youngs and one containing the Lugos, all four of whom were seriously injured in the Accident.

At the time of the Accident, Solano was driving a tractor-trailer owned by Sav-On. Park presents evidence, in the form of sworn testimony, that Sav-On had leased the trailer to Eco pursuant to a written lease agreement and that Sav-On had sold the tractor to Eco pursuant to an installment sales contract, under which Eco had made some payments but had not paid the purchase price in full. However, neither the lease nor the sales agreement between Sav-On and Eco has been produced by anyone in discovery. Park presents evidence, in the form of sworn testimony, that Sav-On's copies of the lease and sales agreements were destroyed in Hurricane Sandy in October 2012.

The Lugos dispute the existence of the lease and sales agreements and adduce evidence that the business relationship between Sav-On and Eco was something other than that of a lessor-lessee and seller-buyer, including evidence that Sav-On was involved in the business of hauling waste and was paid directly for the loads of waste hauled by Eco. Park adduces evidence that Sav-On played no role in brokering and was not paid a broker or any other fee in connection with the load of waste that Solano transported on the day of the Accident, while Defendants adduce evidence that Sav-On may have played such a role and been paid a fee.

There is also a dispute between the parties as to whether, at the time of the Accident, Solano was employed by Eco or by Sav-On, and the parties offer conflicting evidence. At his deposition, Solano testified that he was working for Eco on the day of the Accident; however, prior to this deposition, in an interview by Park's investigators, he signed a statement that said he was working for Sav-On on the day of the Accident.

Eco is a motor carrier with a number assigned by the United States Department of Transportation ("USDOT") and is in the business of transporting non-hazardous municipal waste. Sav-On presents evidence that it was in the business of leasing trailers to carriers of non-hazardous municipal waste. However, the Lugos present evidence that Sav-On denied leasing any "vehicles or equipment" in its application for insurance coverage from Park. Sav-On never had a USDOT number; however, Sav-On did apply to the Pennsylvania Department of Environmental Protection to gain Municipal and Residual Waste Transporter authorization for its trailers.

The following business procedures undertaken by Sav-On and Eco are undisputed: After Eco hauled a load of waste using the tractor-trailer owned by Sav-On, Eco would give Sav-On the "manifest," which contained both the generator ticket, which identified the transfer station from where the waste originated, and the disposal ticket, which was a receipt from the landfill where the waste was deposited. Then, Sav-On would create an invoice for the waste-hauling services and give that invoice to Eco, which Eco would submit to the company responsible for payment. The company responsible for payment would submit the payment directly to Sav-On in the form of checks made out to Sav-On. After receiving the payment, Sav-On would remit a smaller payment to Eco.

Park presents evidence, in the form of sworn testimony, that the payment remitted to Eco from Sav-On was smaller than the payment submitted to Sav-On because Sav-On would deduct amounts Eco owed to Sav-On under the trailer lease and the sales contract for the tractor, as well as insurance and maintenance costs. Park presents evidence, in the form of sworn testimony, that this procedure was followed pursuant to an agreement between Sav-On and Eco and that the

purpose of this arrangement was to ensure that the lease and installment payments would be paid to Sav-On on time and in their entirety.

### B. Procedural History

In June 2012, the Youngs filed an action in New York State Supreme Court, and the Lugos filed an action in the Pennsylvania Court of Common Pleas, both of which assert claims for personal injuries sustained in the Accident against Sav-On, Eco and Solano. The Lugos also filed a second suit in Pennsylvania concerning the Accident, asserting claims against other entities, which will be consolidated with the Lugos' first suit. All three actions currently are pending.

On May 28, 2013, Park filed the instant interpleader action, seeking a determination of how the limited funds of the Policy should be distributed amongst the Youngs and the Lugos, who were asserting competing claims against the Policy and whose claims would likely exceed the amount available under the Policy. The Lugos moved to dismiss the interpleader action for lack of subject matter jurisdiction, as Park had not offered the full amount that the Lugos believed should be recoverable. The Lugos argued that coverage under the Endorsement should make up the $250,000 difference between the Policy limit of $500,000 and the $750,000 motor carriers are required to have available to redress injuries caused to the public.

On July 30, 2013, Park filed an Amended Complaint, seeking an order regarding the Youngs' and Lugos' respective rights to the Policy proceeds, and if applicable, to the Endorsement proceeds. The Amended Complaint disputed that any amount was payable under the Endorsement in connection with the Accident, but stated that Park would seek an order directing it to deposit a bond in the amount of $750,000 with the registry of the Court in order to

5

satisfy 28 U.S.C. § 1335.  The Lugos filed an answer to the Amended Complaint on August 19, 2013.

On September 4, 2013, the Court ordered limited discovery related to the issue of whether coverage under the Endorsement should apply, and after this limited discovery was completed, the parties filed the instant motions for summary judgment.  On May 12, 2014, the Court issued an order directing Park to deposit $750,000, or an equivalent bond, with the registry of the Court by May 15, 2014.  Park requested an extension, and on May 19, 2014, the Court issued an order directing Park to make the deposit or post the bond by May 26, 2014.  On May 27, 2014, Park deposited $750,000 with the Court.

## II. Standard of Review

Summary judgment is appropriate only where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party.  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008).

## III. Discussion

### A. Coverage under the Endorsement

Park and the Lugos each filed cross motions for summary judgment on the issue of whether Park has liability under the Endorsement to pay damages resulting from the Accident. Park seeks summary judgment finding that Park has no liability under the Endorsement, while the

6

Lugos seek summary judgment finding that Park is obligated to provide the proceeds of the Endorsement to satisfy its obligations in this matter.

In 1980, Congress enacted the MCA, which, among other things, requires that regulations be created to assure minimum levels of financial responsibility for motor carriers engaged in interstate commerce sufficient to satisfy potential liability for injury to the public, property damage and environmental restoration. *See* 49 U.S.C. § 31139(b). The federal regulations enacted pursuant to the MCA require for-hire motor carriers transporting non-hazardous property in interstate commerce to maintain a minimum level of financial responsibility in an amount of $750,000 or greater. *See* 49 C.F.R. §§ 387.7(a), 387.9. An MCS-90 Endorsement, such as the Endorsement at issue in this case, is one way that a motor carrier can satisfy this requirement. *See* 49 C.F.R. § 387.7(d)(1).

Park argues that it has no liability under the Endorsement arising from the Accident for two reasons: (1) Park's insured, Sav-On, at the time of the Accident, was not a "motor carrier;" and (2) when the Accident occurred, the tractor-trailer involved was not transporting property in interstate commerce. The Lugos dispute both of these assertions.

As an initial matter, Park's argument concerning transporting property in interstate commerce fails. Park attempts to establish that, at the time of the Accident, the tractor-trailer was not transporting property in interstate commerce because the trailer was empty. The fact that the trailer had, before the Accident occurred, already been emptied of the municipal waste it had hauled from New York to Pennsylvania is undisputed. However, the evidence also shows that at the time of the Accident, Solano was on his way back to New York from Pennsylvania in order to

7

pick up another load of waste to haul to Pennsylvania. Thus, Solano was in the middle of a commercial trip to haul waste from one state to another.

Federal regulations define interstate commerce, in part, as "trade, traffic, or transportation in the United States-- (1) Between a place in a State and a place outside of such State" 49 C.F.R. § 390.5. The Second Circuit has held that whether transportation is in interstate commerce "may be determined by looking to the intent of the goods' seller or shipper with respect to the goods' destination." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 58 (2d Cir. 2012) (internal quotation marks omitted). Here, the intent was to move municipal waste from New York to Pennsylvania. Thus, Solano was at the time of the Accident "engaged in interstate commerce."

The term "property" is not defined in the MCA or in the federal regulations enacted pursuant to the MCA, and case law appears to be silent on this point as well. However, a USDOT notice of regulatory guidance states that transporting an empty commercial motor vehicle across state lines for purposes of repair and maintenance is considered interstate commerce and that the "property" involved in such a situation is the empty commercial motor vehicle itself. *See* 62 FR 16406. Although, here, the tractor-trailer was not being transported for the purposes of repair and maintenance, it can be inferred from this guidance that an empty vehicle traveling across state lines in the middle of a trip hauling property – a purpose even more closely related to transporting property than is repair and maintenance – may be considered interstate commerce.

Therefore, whether coverage under the Endorsement applies in this case depends on whether Park's insured, Sav-On, was acting as a "motor carrier" at the time of the Accident. The MCA and the federal regulations enacted pursuant to it are clear that the financial responsibility

requirements apply only to "motor carriers." *See* 49 U.S.C. § 31139(b); 49 C.F.R. §§ 387.1, 387.3(a), 387.7(a).

The MCA defines a "motor carrier" as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The federal regulations enacted pursuant to the MCA define "motor carrier" as "a for-hire motor carrier or a private motor carrier." 49 C.F.R. § 387.5. This definition continues by explaining that the "term includes, but is not limited to, a motor carrier's agent, officer, or representative; an employee responsible for hiring, supervising, training, assigning, or dispatching a driver; or an employee concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." *Id.* Additionally, these federal regulations define "for-hire carriage" as "the business of transporting, for compensation, the goods or property of another." *Id.*

Park argues that, under the facts in this case, Sav-On does not meet the above definitions of a motor carrier. Park relies heavily on the alleged facts that Sav-On was simply leasing the trailer and selling the tractor to Eco and was not otherwise involved in the business of hauling waste. Park offers case law, albeit from other jurisdictions, in which courts found that lessors of vehicles were not motor carriers under the MCA. *See*, *e.g.*, *Castro v. Budget Rent-A-Car System, Inc.*, 65 Cal. Rptr. 3d 430 (2007).

However, most of the facts cited by Park are disputed. Specifically, whether Sav-On was indeed leasing and selling the trailer and tractor, respectively, to Eco at the time of the Accident is disputed. Copies of the lease and the installment sales agreement have not been located. They were not produced by any party to this matter, or by any non-party, and they were not found in

the tractor-trailer itself. Moreover, Sav-On stated in its application for insurance coverage from Park that it did not lease any vehicles or equipment.

The Lugos adduce sufficient evidence that a reasonable jury could find that Sav-On was acting as a "motor carrier" at the time of the Accident, including: evidence that Sav-On owned the tractor-trailer at issue and was not in the business of leasing vehicles; evidence that Solano was employed by Sav-On; evidence that Sav-On paid for maintenance on the tractor-trailer; and evidence that Sav-On was paid directly for the loads of waste hauled in its tractor-trailer and would then pay Eco a reduced amount.

On the other hand, Park adduces sufficient evidence that a reasonable jury could find that Sav-On was not acting as a "motor carrier" at the time of the Accident, including: evidence that Sav-On was leasing the trailer and selling the tractor to Eco; evidence that Solano was an employee of Eco; evidence that Sav-On did not play a role in securing the load of waste Eco hauled on the day of the Accident; and evidence that Sav-On was not paid any fee for transporting the load of waste Eco hauled on the day of the Accident.

Therefore, both parties' motions for summary judgment are denied on the issue of whether Sav-On was acting as a "motor carrier" at the time of the accident, which determines whether coverage under the Endorsement applies to judgments against Sav-On. Genuine issues of material fact exist for trial, including, among others:

1. Whether there was a lease and/or an installment sales agreement between Eco and Sav-On regarding the tractor-trailer involved in the Accident;

2. Whether, on the day of the Accident, Solano was an employee of Eco or Sav-On;

3. Why Sav-On was compensated directly for the loads of waste transported by Eco;

      4.      What the money that was deducted by Sav-On before paying Eco was for; and

      5.      How involved Sav-On was in the business of hauling waste, for example, whether Sav-On secured loads of waste for Eco.

However, Park's motion for summary judgment finding that it is not liable under the Endorsement for any judgment against Eco and/or Solano is granted. The Endorsement itself states that the insurer "agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability." The federal regulations enacted pursuant to the MCA define "insured" as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." 49 C.F.R. § 387.5.

Moreover, a USDOT notice of regulatory guidance states that an MCS-90 Endorsement "[is] not intended, and do[es] not purport, to require insurance companies or sureties to satisfy a judgment against any party other than the motor carrier named in the endorsement or its fiduciary." 70 FR 58065-01. Therefore, if it is ultimately found that the coverage under the Endorsement does apply in this case, Park's liability under the Endorsement will be limited to any judgments against Sav-On, the named insured on the Endorsement.

      **B. Interpleader**

The Lugos move for summary judgment finding that Park is required to interplead the entire $750,000 of coverage available under the Endorsement or, in the alternative, dismissing the action on the ground that Park lacks clean hands.

This action will not be dismissed on the ground that Park lacks clean hands. Park properly filed this interpleader action to resolve multiple, competing claims to a finite amount of

11

money.  *See* 28 U.S.C. § 1335.  "An interpleader action is a useful tool for determining ownership of a discrete item of property in the possession of a disinterested stakeholder that is subject to multiple or competing claims."  *Citigroup Global Markets, Inc. v. KLCC Investments, LLC*, No. 06 Civ. 5466, 2007 WL 102128, at *5 (S.D.N.Y. Jan. 11, 2007).

Park filed this action without reference to the Endorsement; however, Park maintains that it believed the Endorsement did not apply.  The Lugos argue that Park did not have knowledge of the facts sufficient to determine whether the Endorsement should apply and that Park did not perform an independent investigation into those facts; thereby, acting with unclean hands when not referencing the Endorsement.  Even if these allegations are true, this argument fails.

Interpleader is "fundamentally an equitable remedy," so "the rule that one who seeks equitable relief must come into court with clean hands applies."  *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F.Supp.2d 355, 362 (S.D.N.Y. 2008) (citing *Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 63 (2d Cir. 1994); *Royal Sch. Labs., Inc. v. Town of Watertown*, 358 F.2d 813, 817 (2d Cir. 1966)).  However, "'courts that have denied injunctive relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior.'"  *Id.* (quoting *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F.Supp.2d 126, 131 (S.D.N.Y. 1999)).

The Second Circuit has established that for the doctrine of unclean hands to bar the availability of interpleader relief, the conduct of the party seeking such relief must meet a certain threshold that is greater than mere negligence, such as intentional wrongdoing.  *See Royal Sch. Labs., Inc.*, 358 F.2d at 817; *Mallory S.S. Co. v. Thalheim*, 277 F. 196, 201-202 (2d Cir. 1921); *see also William Penn Life Ins. Co. of New York*, 569 F.Supp.2d at 363.  Therefore, Park's failure to conduct an investigation would not suffice to require dismissal of this action.

### IV.     Conclusion

For the reasons discussed above, Park's motion for summary judgment finding that the Youngs and the Lugos are entitled to the limits of the Policy and are not entitled to any sums under the Endorsement is DENIED; Park's motion for summary judgment finding that Park has no liability under the Endorsement to pay any judgment that may be entered against Sav-On is DENIED; Park's motion for summary judgment finding that Park has no liability under the Endorsement to pay any judgment that may be entered against Eco and/or Solano is GRANTED; the Lugo's motion for summary judgment finding that Park is obligated to provide the proceeds of the Endorsement to satisfy its obligations in this matter is DENIED; the Lugos' motion for summary judgment dismissing this action on the ground that Park lacks clean hands is DENIED; and the Lugos' motion for summary judgment directing Park to deposit with the Court $750,000 is DENIED as moot.

The Clerk of the Court is directed to close the motions at Docket Nos. 27 and 37.

A conference in this matter is hereby scheduled for June 9, 2014 at 10:30 a.m.

SO ORDERED.

Dated: June 2, 2014
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE