UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
PARK INSURANCE COMPANY,                                       :
                                    Plaintiff,                :
                                                              :    13 Civ. 03567 (LGS)
             -against-                                        :
                                                              :    FINDINGS OF FACT AND
MONICO LUGO, et al.,                                          :    CONCLUSIONS OF LAW
                                    Defendants.               :
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Park Insurance Company ("Park") brings this interpleader action under 28 U.S.C. § 1335 to obtain a discharge of liability to two competing sets of claimants, by depositing with the Court the insurance proceeds at issue. The principal threshold question is the amount that must be deposited, which depends on the extent of insurance coverage, and specifically the applicability of a particular endorsement to the insurance policy. Based on the facts adduced at a half-day trial, the endorsement does apply, and Park may be discharged based on its previous deposit with the Court of $750,000.

I.      BACKGROUND AND PROCEDURAL HISTORY

Park issued a business automobile insurance policy (the "Policy") to Sav-On Waste Services, LLC ("Sav-On") for up to $500,000 and a Form MCS-90 Endorsement for Motor Carrier Policies of Insurance for Public Liability (the "Endorsement") under Sections 29 and 30 of the Motor Carrier Act of 1980 ("MCA") for up to $750,000 for a one-year period beginning May 23, 2011.

Defendants are Monico Lugo and Sarah Lugo (together, the "Lugos") and Thomas Young and Susan Eichhorn-Young (together, the "Youngs"). Defendants were seriously injured in a multi-vehicle accident on Interstate 84 in Westfall, Pennsylvania in June 2011 ("the Accident").

The Lugos are New York domiciliaries. The Youngs are Pennsylvania domiciliaries. The Lugos and Youngs brought claims in the New York and Pennsylvania state courts, respectively, against (1) Daniel Solano, the driver of a tractor trailer involved in the accident; (2) Eco America Trucking Corp. ("Eco"), the corporate operator of the tractor trailer; and (3) Sav-On, the owner of the tractor trailer. Defendants' collective damages are likely to exceed the value of the amount interpleaded in this action.

Park filed its Interpleader Complaint against the Youngs and the Lugos on May 28, 2013, seeking to interplead the $455,013.01 remaining under the policy, determine Defendants' competing rights to that amount, and obtain discharge of Park's liability upon deposit of that amount with the Court. The Lugos moved to dismiss for lack of subject matter jurisdiction because Park had not also included proceeds from the Endorsement for a combined total of $750,000. The federal regulations enacted pursuant to the MCA require for-hire motor carriers transporting non-hazardous property in interstate commerce to maintain a minimum level of financial responsibility in an amount of $750,000 or greater. *See* 49 CFR §§ 387.7(a), 387.9. Park responded with an Amended Interpleader Complaint, agreeing to deposit a $750,000 bond to ensure the Court's subject matter jurisdiction, but disputing that Defendants are entitled to any proceeds under the Endorsement. On May 27, 2014, Park deposited $750,000 with the Court.

Park and the Lugos cross-moved for summary judgment to determine Park's liability to Defendants on the Endorsement. Park was found to have no liability under the Endorsement to pay any judgment against Eco and/or Solano, who are not insureds under the Policy. Summary judgment was not entered on the issue of whether the Endorsement covers any judgment against Sav-On as a result of the Accident because issues of material fact precluded a determination of

2

the dispositive issue -- whether Sav-On was acting as a "motor carrier" at the time of the Accident.

On December 15, 2014, the parties presented evidence on the question of whether Sav-On was acting as a motor carrier at the time of the Accident. The parties called three witnesses. Two witnesses testified live -- Edward Hom, the principal and sole owner of Sav-On, the corporate insured and owner of the tractor trailer; and Victor Sanchez, the principal and sole owner of Eco, the corporate operator of the tractor trailer. Daniel Solano, the driver, testified through selected portions of his deposition testimony. The parties also submitted a stipulation of uncontested facts and documentary exhibits that included the Policy, the Endorsement, and Sav-On's bank records.

## II.  FINDINGS OF FACT

Based on the documents admitted into evidence and credibility judgments of the testifying witnesses, the following are the Court's findings of fact relating to the dispositive issue of whether Sav-On was acting as a motor carrier at the time of the Accident.

### A.  The Policy and Endorsement

On June 9, 2011, Park issued the Policy to Sav-On, which covered the period from May 23, 2011, through May 23, 2012. The Policy provides accident liability insurance of up to $500,000 per accident and covers ten semi-trailers and two truck-tractors owned by Sav-On, including the tractor and trailer involved in the Accident.

The Policy includes the Endorsement, which provides $750,000 to satisfy any final judgment against Sav-On for bodily injury or property damage resulting from negligence in the operation of motor vehicles subject to certain financial responsibility requirements under the MCA.

### B. Sav-On

Sav-On is owned and operated exclusively by Edward Hom. In 2011, Sav-On owned approximately ten trailers and two tractors, including the tractor-trailer involved in the Accident. Sav-On hired owner-operators of trucks to haul municipal solid waste from transfer stations to landfills. Sav-On also engaged in a "brokering" business, advising truckers where to get their loads of garbage, in return for a commission paid by the municipality or other entity that controlled the garbage.

Hom does not maintain a commercial driver's license, and Sav-On is not registered with the United States Department of Transportation, Federal Motor Carrier Safety Administration as a motor carrier. Sav-On did apply for a Municipal Residual Waste Transporter Authorization from the Pennsylvania Department of Environmental Protection, which was necessary to transport municipal waste through the state of Pennsylvania.

The lack of record keeping, lack of written contracts, large cash withdrawals without any record of how the cash was spent, and Hom's lack of memory about basic facts all suggest a systematic way of doing business that was designed to be, and largely was, "off the record."

### C. Eco

Eco was a trucking company whose business was hauling municipal waste to landfills. Eco was a registered motor carrier with the Department of Transportation. At the time of the Accident, Eco owned one truck tractor and was in the process of purchasing a second, the one involved in the Accident, from Sav-On. Eco was wholly owned by Victor Sanchez and ceased to do business in 2012.

4

In 2011, Eco had three truck drivers, including the owner Mr. Sanchez and Mr. Solano, who was the driver of the tractor involved in the Accident. Mr. Solano was sufficiently confused about the identity of his employer that he gave a statement in July 2011 stating that he had been employed by Sav-On, but changed that statement in his 2013 deposition, stating that his employer had been Eco. In May 2011, a month before the Accident, Sav-On paid Mr. Solano, the driver of the truck in the accident, $1,200, but Mr. Hom has no record or recollection of what the payment was for.

### D. Relationship Between Sav-On and Eco

From week to week, Eco "leased" from one to six trailers from Sav-On, depending on the number of loads Eco was scheduled to deliver. Sav-On and Eco had entered into two lease agreements, each for one trailer. To the extent Eco needed more than the two trailers covered by the lease agreements, the parties operated by verbal agreement. If there ever was a written lease agreement that covered the trailer involved in the Accident, it no longer exists, and Sav-On had the only copy of it. Sanchez never had a copy of any lease agreement, nor did he request one.

The trailer involved in the Accident was owned by Sav-On and in use by Eco to haul municipal waste. Sav-On registered it, insured it and paid the premium on it. Eco paid Sav-On weekly for the use of the trailer, as well as a fee of $25 per load.

The tractor involved in the Accident also was owned by Sav-On but registered by Eco. Sav-On had purchased the tractor to sell to Eco. Eco made monthly payments to Sav-On toward the purchase of the tractor and ultimately purchased it sometime after the accident. Eco was responsible for paying for fuel, repairs and maintenance on the tractor. Sav-On insured the tractor, but it is unclear whether Sav-On or Eco paid the insurance premium. If there ever was a

written sales agreement for the tractor involved in the Accident, it no longer exists, and Sav-On had the only copy of it.  Eco was legally required to keep a copy of the agreement in the truck, but did not do so.

Sav-On provided Eco with two credit cards to pay for fuel or repairs.  The driver, Mr. Solano, had possession of one of the credit cards.  Eco was to reimburse Sav-On for any fuel or repairs charged to the credit cards.  Sav-On and Eco have no records of how much Eco charged on the credit cards.

Eco hauled municipal waste for at least two companies --Tully Environmental and Margiotta Enterprises.  At the time of the Accident, Solano was returning from a job for Margiotta.  Eco's customers received a weekly Sav-On invoice and made payments directly to Sav-On for Eco's services.  Sav-On deducted the amounts Eco owed to Sav-On – for the use of the trailer, the purchase of the truck, credit card charges, Sav-On's fee per load, and any other items – and then paid the balance to Eco.   If Eco had a "negative week" in which expenses exceeded income, Sav-On loaned Eco money, which Eco repaid.  Sav-On and Eco have no records of any of these amounts or transactions.

Sav-On's banking records (obtained from the bank, not Sav-On) reflect frequent and substantial cash withdrawals.  For example, in May 2011, there were 6 cash withdrawals totaling $33,000.  In June 2011, there were 4 cash withdrawals totaling $32,000.  Sav-On maintains no records to reflect how the cash was spent.

### III.   CONCLUSIONS OF LAW

Based on the above factual findings, a plain reading of the MCA and its regulations, and the applicable case law, Sav-On was a "motor carrier" at the time of the Accident and Park is

therefore liable on the Endorsement.

The MCA, 49 U.S.C. § 10101 *et seq.*, and its regulations require motor carriers that operate motor vehicles for transporting non-hazardous property in interstate commerce to carry proof of financial responsibility of at least $750,000. 49 U.S.C. § 31139(b); 49 C.F.R. §§387.1, 387.7. A Form MCS-90 Endorsement is one way for a motor carrier to establish its compliance with the financial responsibility requirements. 49 C.F.R. §387.7(d).

The Endorsement appended to the Policy provides that "the insurer [Park] agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured [Sav-On] for public liability [defined to include "liability for bodily injury, property damage"] resulting from negligence in the operation, maintenance or use of *motor vehicles subject to the financial responsibility requirements of Sections 29 and 30* of the Motor Carrier Act of 1980 . . . ." (emphasis added). The parties do not dispute that the tractor-trailer involved in the Accident is a "motor vehicle" subject to the MCA.

The parties agree that the only issue is whether Sav-On was a "motor carrier" under the MCA. *But see Shropshire v. Shaneyfelt*, No. 12 Civ. 1657, 2013 WL 3666353, at *4 (W.D. Pa. July 12, 2013) (stating that "the Court is not aware of any binding precedent that requires that the Court definitively rule that [the insured] was/was not a 'for-hire motor carrier'" in determining whether an MCS-90 endorsement applies). The MCA defines "motor carrier" as "a person providing motor vehicle transportation for compensation." 49 U.S.C. §13102(14). Federal regulations promulgated pursuant to the MCA define "motor carrier" as a "for-hire motor carrier or a private motor carrier" and provide that a motor carrier includes "a motor carrier's agent, officer, or representative." 49 C.F.R. § 387.5.

Because at the time of the Accident, Sav-On was the owner of a motor vehicle that transported property in interstate commerce, and Sav-On received compensation for that transport, Sav-On was a motor carrier for purposes of the MCA.  *See Herrod v. Wilshire Ins. Co.*, 499 F. App'x 753,760 (10th Cir. 2012) (citing 49 C.F.R. § 387.5 in explaining that the central inquiry in determining whether an entity is a motor carrier under the MCA is whether it received compensation for transporting goods or property across state lines).

Case law interpreting the MCS-90 requirement under the MCA provides further support for this conclusion.  "[T]he MCA and the regulations promulgated pursuant thereto . . . were designed to stem the unregulated use of non-owned [i.e. leased] vehicles that threatened both public safety and the vitality of the trucking industry." *Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*, 930 F.2d 258, 261 (2d Cir. 1991).  In *Integral*, the Second Circuit held that "when a judgment is entered against the owner of a motor vehicle insured under an MCS-90 endorsement, the insurer is obligated to indemnify, even when the judgment is based on a theory of vicarious liability." *Id.* at 262.  Like the insurer in *Integral*, Park is liable on the Endorsement for any judgment entered against Sav-On, which is the insured under the Endorsement.

For the MCA's requirements to apply, the statute does not appear to require that the insured operate as a "motor carrier" with respect to certain "motor vehicles" or even for the particular time at issue.  Some courts construing the statute, however, have read these additional requirements into the statue.  *See, e.g.*, *Herrod*, 499 F. App'x at 759 ("[I]n order to determine whether [an] MCS–90 endorsement applies, it must be determined initially whether [the insured] was operating as a for-hire motor carrier at the time of the accident."); *Del Real v. U.S. Fire Ins. Crum & Forster*, 64 F. Supp. 2d 958, 965 n.9 (E.D. Cal. 1998) (implying that for an MCS-90

8

endorsement to apply, the insured must be a motor carrier as to the particular motor vehicle at issue). For example, the court in *Shropshire*, relying on *Integral*, concluded that a lessor who owns the motor vehicle in question; knows that the motor vehicle will be used in interstate transport; and has that motor vehicle registered in its name is liable under an MCS-90 endorsement as a "for-hire motor carrier" under the MCA. 2013 WL 3666353, *4.

Like the insured vehicle-owners in *Integral* and *Shropshire*, Sav-On owned the tractor-trailer in question and "leased [it] . . . for use in transporting goods in interstate commerce." *Id*. Further, at the time of the Accident, Sav-On was receiving direct compensation from Margiotta for such transportation. Accordingly, based on the holdings in *Integral* and *Shropshire*, the Endorsement applies, and Park is liable to provide coverage under it.

Park's reliance on *Del Real v. U.S. Fire Insurance Crum & Forster* in urging a contrary conclusion is misplaced for two reasons. First, *Del Real*'s limited holding has no application here. The court in *Del Real* held that where plaintiffs have offered "no contrary evidence" to disturb the conclusion that a defendant "is an equipment lessor of trailers, and not a for-hire motor carrier," the defendant was not a motor carrier for the purposes of the MCA. 64 F. Supp. 2d at 965. As the other case Park relies on, *Castro v. Budget Rent-A-Car Sys., Inc.*, clarifies, *Del Real* stands for the limited proposition that where "there was a lease agreement between [lessor and lessee], nothing more," the lessor is not a motor carrier for purposes of the MCA. 154 Cal. App. 4th 1162, 1176 (2007). Here, the relationship between Sav-On and Eco was much more than that of lessor and lessee. Sav-On maintained close control over Eco's operations of the vehicle. Sav-On provided cash advances and general financing for any upkeep of the vehicle. Sav-On, and not Eco, received direct payment for the vehicle's transportation services.

Second, here, unlike in *Del Real*, there is no explanation for why Sav-On carried the Endorsement unless it was acting as a motor carrier.  The lessor of the motor vehicle in *Del Real* had an MCS-90 endorsement "only because [it] maintain[ed] D.O.T. licenses" for other vehicles that were not implicated in the case.  64 F. Supp. 2d at 965 n.9.  Here, by contrast, Sav-On had no reason, and refused to provide any at trial, for carrying an MCA-compliant Endorsement unless it was acting as a motor carrier.  Indeed, by Hom's own testimony, Sav-On maintained all the insurance requirements for the tractor-trailer at issue, which, as discussed above, necessarily included the Endorsement.

Accordingly, the Endorsement applies.

## IV.   CONCLUSION

For the reasons discussed above, Park is liable for any judgment against Sav-On under the Endorsement.  No later than **April 14, 2015**, Park shall file a motion for discharge with a proposed form of order (a courtesy copy of which should be sent in Word format to the Court's chambers email address) or the parties shall file a joint letter informing the Court of how they wish to proceed with the case.

SO ORDERED.

Dated: April 6, 2015
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE